JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WONG, individually and on behalf of all others similarly situated,<br>　　　Plaintiff,<br><br>　　　v.<br><br>BOB'S DISCOUNT FURNITURE, LLC,<br>　　　Defendant. | CV 22-4220 DSF (JEMx)<br><br>Order GRANTING Motion to Compel Individual Arbitration (Dkt. 12) |

　　　Defendant Bob's Discount Furniture, LLC (BDF) moves to compel individual, non-class arbitration based on contracts between Defendant and Plaintiff Kenneth Wong. Dkt. 12 (Mot.). Wong opposes. Dkt. 28 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. BACKGROUND

　　　BDF is one of the fastest growing furniture chains in the nation. Dkt. 1 (Compl.) ¶ 56. BDF markets, promotes, and sells furniture with added protection plans known as "Goof Proof." Id. ¶ 1. BDF describes "Goof Proof" as a service contract and "the best way to protect your investment from a wide variety of accidents for 5 years." Id. ¶ 2-3. Wong alleges that the plan does not protect the furniture customer's purchase and is riddled with exclusions that are disclosed to purchasers only after they purchase the plan and receive the full agreement by mail or email. Id. ¶¶ 11-14.

Wong alleges that the plan excludes coverage for customer misuse – even if unintentional, unexpected, or unforeseen – and even if it is considered "general wear & tear." Id. ¶ 8, 10. BDF also classifies rips, tears, breaks, and punctures as defects that are also excluded. Id. ¶18. The most common reason BDF denies claims is because the claimant cannot identify the specific event that caused the damage. Id. ¶15. In such cases, the denial is categorized as customer misuse or wear and tear. Id. ¶16. BDF also denies claims if customers are unable to identify the date the accident occurred, or if there is more than one mark or puncture in the furniture. Id. ¶¶ 19, 21. BDF categorizes other denials of claims as "accumulated [stains/tears/etc]," "frame defects," "repetitive," or "preventable." Id. ¶ 23.[1]

On March 23, 2019, Wong purchased a Jaxon sofa and chair combo for $749.00, and the "Goof Proof" plan for $129.00 at the Bob's Discount Furniture store at 19800 Hawthorne Blvd. Torrance, CA 90503. Id. ¶ 29. During the sales process, BDF representatives offered Wong the "Goof Proof" plan and assured him that it would cover any possible damage. Id. ¶ 52. Wong asked what the plan covered and was told it would cover any issue that would come up over a five-year period. Id. ¶ 53. Wong relied on this representation when he made his purchase. Id. In June 2020, Wong submitted claims for his purchase because the chair arm became deformed and warped, and the seat cushions suffered loss of resiliency. Id. ¶ 31. BDF denied his claim on the grounds that it was not a customer caused accident and the plan did not cover loss of foam resiliency. Id. ¶¶ 32-33, 37.

Wong alleges that BDF makes most of its profit through the sale of "Goof Proof" plans. Id. ¶ 58. BDF sales personnel receive bonuses for the number of plans sold, creating the incentive to give customers false assurances about the coverage provided. Id. ¶¶ 59-60. Wong alleges that he would not have purchased the plan if he knew "its exclusions would be used to swallow up coverage." Id. ¶ 63. He asserts

---

[1] This paragraph also refers to "Defendant Guardian," but "Guardian" is not a defendant and is not otherwise mentioned.

that the plan is worth less than he paid, and he would not have paid as much, or anything, for the plan absent BDF's false and misleading statements and omissions. Id. ¶ 64.

Wong brings a putative class action suit on behalf of all California citizens "who purchased Goof Proof for personal or household use within the statutory period." Id. ¶74. Wong asserts six causes of action: (1) violation of California's Unfair Competition Law (UCL), (2) false and misleading advertising in violation of California's False Advertising Law (FAL), (3) violation of California's Consumer Legal Remedies Act (CLRA), (4) breach of express warranty, implied warranty of merchantability, and violation of the Magnusson-Moss Warranty Act, (5) bad faith insurance deal, and (6) unjust enrichment. Id. ¶¶ 89-146.

## II. LEGAL STANDARD

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

Generally, a court's role under the FAA is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). Even these gateway issues can be submitted to an arbitrator where there is clear and unmistakable evidence that the parties intended that result. See id. (citing AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)). The FAA "establishes that,

3

as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver [or] delay." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985). The burden to prove that a matter should not be stayed and referred to arbitration is on the party opposing arbitration. Green Tree Fin. Corp. Alabama v. Randolph, 531 U.S. 79, 91 (2000).

## III. DISCUSSION

The parties do not dispute that the March 23, 2019 sales receipt[2], reflecting Wong's purchase of furniture and the "Goof Proof" coverage as well as the "Goof Proof" terms and conditions each contain an arbitration provision. Wong contends that the arbitration provisions are unenforceable. BDF contends the provisions compel individual arbitration and preclude class arbitration.

### A.  Enforceability

BDF contends that Wong entered into two agreements that require him to arbitrate the dispute. Mot. at 2. The sales receipt contains an arbitration provision. Id. at 2-3 (citing Dkt. 12-1 (Lotufo Decl.), Ex. A. BDF points out that the page Wong signed states: "I acknowledge that the information on the above page(s) is accurate and that I have read and agree to the sales terms on the following page." Id. (citing Lotufo Decl., Ex. A). BDF also relies on the "Goof Proof" terms and conditions, a document that contains a separate arbitration provision. Id. at 3 (citing Lotufo Decl., Ex. B). The Court finds that the agreement to arbitrate is enforceable.

---

[2] Wong refers to the March 23, 2019 document as a "sales receipt" (and BDF's vice president of finance describes it that way); BDF refers to it as a "purchase order." The Court refers to it as a sales receipt.

4

1.  Validity

Wong argues that the agreement he signed is not valid for various reasons. Opp'n at 6-10. First, he asserts in a single conclusory sentence that there was no meeting of the minds or mutual assent on all essential terms. Id. at 7. No further evidence or argument is presented. But such contentions must be supported and the Court "is neither required to hunt down arguments the parties keep camouflaged, nor required to address perfunctory and undeveloped arguments." Khademi v. South Orange Cnty. Cmty. College Dist., 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) (quoting Williams v. Eastside Lumberyard & Supply Co., 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001)). In any event, BDF counters that Wong manifested his intention to be bound by the terms of the document by signing it and acknowledging "I have read and agree to the sales terms of the following page." Reply at 1. The Court agrees.

Next, Wong contends that the "incorporation by reference" doctrine "excludes" the arbitration provision accompanying the sales receipt. Mot. at 7. He states that since the sales terms "failed to clearly and unequivocally refer to the incorporated [arbitration] provision nor called it to Plaintiff's attention, Defendant's reliance on incorporation by reference must fail." Id. at 7-8 (simplified). But the doctrine does not apply here because the sales receipt contains the arbitration provision at issue; it is not "incorporated by reference."

Wong also asserts that oral representations made to him contradicted the terms and conditions and that although the parole evidence rule generally bars the admission of evidence contradicting the terms of an agreement, such evidence is allowed to show fraud in the inducement. Opp'n at 10. He specifically alleges that after being offered the "Goof Proof" plan, Wong asked what the plan would cover and was told that it would cover "any issues." Id. "When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2[.]" Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th

Cir. 2006). But "when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question . . . must be referred to the arbitrator." Id. (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006)); see Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Wong's claim is not specific to the arbitration provision and must be submitted to the arbitrator.

### 2. Unconscionability

Wong argues that the agreement is unconscionable. Opp'n at 8-9. To establish unconscionability, a party must demonstrate both procedural and substantive unconscionability, although both are not required to be equally present. Lim v. TForce Logistics, LLC, 8 F.4th 992, 1000 (9th Cir. 2021). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US) LLC, 55 Cal. 4th 223, 246 (2012). Substantive unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." Id. ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." (quotation marks omitted)). The party "resisting arbitration bears the burden" to show both procedural and substantive unconscionability, but need not show equal amounts of both – "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. at 247 (alteration omitted) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000)).

Wong contends that the agreement to arbitrate is procedurally unconscionable. Opp'n at 9. He argues that it was drafted by a party with superior bargaining strength and offered on a take it or leave it

6

basis with no opportunity for him to negotiate the terms. Id. He also asserts that the arbitration requirement was not brought to his attention, the provision was on the reverse side of the agreement where a consumer was unlikely to read it, the sales terms were not made available to him before he signed the agreement and provided consideration, and he was unable to opt out of arbitration. Id.

BDF asserts that procedural unconscionability requires an inequality in bargaining power accompanied by a lack of disclosure of material provisions. Id. at 9 (citing Robison v. City of Manteca, 78 Cal. App. 4th 452, 459 (2000)). BDF contends that there was no lack of disclosure here because the sales terms and conditions are on a single page of plainly-worded text, and Wong acknowledged that he read and agreed to the terms. Id. BDF also asserts that both agreements call attention to their arbitration provisions with bold headings. Id.

Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. See Lim, 8 F.4th at 1000 (citing Pinnacle Museum Tower Ass'n, 55 Cal. 4th 236). "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." Id. (citation omitted). "Oppression can be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." Id. (internal quotation marks and citation omitted). However, a contract of adhesion is not per se unconscionable. Id. (internal quotation marks and citation omitted). The Supreme Court of California has explained:

> There are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability . . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum . . . . Ordinary contracts of adhesion, although they are indispensable facts of modern life . . . contain a degree of procedural unconscionability even without any notable surprises,

and bear within them the clear danger of oppression and overreaching.

Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1244 (2016) (simplified). Moreover, "[s]urprise is a function of the disappointed reasonable expectations of the weaker party, and involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Net Glob. Mktg., Inc. v. Dialtone, Inc., 217 F. App'x 598, 601 (9th Cir. 2007) (internal quotation marks and citations omitted).

Here, BDF drafted the arbitration provision. Wong was not provided with an opportunity to negotiate or modify the terms; his only option was to accept the agreement as is in order to purchase the furniture from BDF. However, Wong has not established surprise. He contends the arbitration provision was not brought to his attention, but the party drafting an agreement is under no obligation to highlight or to call attention to an arbitration clause for the counterparty. Lim, 8 F.4th at 1001 (citation omitted). Additionally, the sales terms, including the arbitration provision, accompanying the sales receipt were on a single page, and the arbitration provision was identified with a capitalized, bold heading. Cf. id. ("TForce presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font."); Net Glob. Mktg., Inc., 217 F. App'x at 601 ("The clause was located twelve pages into a seventeen page legal document . . . . There was no 'clear heading' in the Terms of Service that could refute a claim of surprise; to the contrary, the arbitration clause is listed in the midst of a long section without line breaks under the unhelpful heading of 'Miscellaneous.'"). These circumstances establish a low degree of procedural unconscionability. See, e.g., Lim, 8 F.4th at 1001; Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 784 (9th Cir. 2002).

Next the Court considers whether Wong has established that the agreement is substantively unconscionable. "Substantive unconscionability examines the fairness of a contract's terms." Lim, 8 F.4th at 1001 (citation omitted). "The substantive unconscionability

doctrine is concerned with terms that are unreasonably favorable to the more powerful party, not just a simple old-fashioned bad bargain." Id. "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." Id. Wong's arguments fall short of establishing substantive unconscionability.

Wong asserts that the sales terms contain elements of an illusory contract. Opp'n at 10. He alleges that the terms allowed BDF "to avoid liability by classifying damage as 'wear and tear,'" and BDF had no intention of being bound by its promise to remedy accidental stains or damages. Id. at 11. He contends BDF failed to act consistent with the implied covenant of good faith and fair dealing. Id. Wong also argues that the sales terms are a contract of adhesion because they created an unfair surprise that "Goof Proof" did not cover damage classified as normal wear and tear. Id. at 12. The issues Wong raises are not specific to the arbitration provision and are for the arbitrator. See Nagrampa, 469 F.3d at 1264. Wong does not argue that the arbitration provision itself is unconscionable, and it is not the role of the Court to make parties' arguments for them. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003). Wong fails to demonstrate that the agreement to arbitrate is substantively unconscionable.

## B. Non-Class Arbitration

BDF argues that the arbitration provisions in the sales receipt and the "Goof Proof" terms and conditions opt out of class action treatment, so the Court should order Wong to arbitrate his claims on an individual basis. Mot. at 10. Wong offers no argument on this issue.

"[T]he Supreme Court has suggested that arbitration agreements can generally waive collective, classwide, and representative claims." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1264 (9th Cir. 2017). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings," and "[r]equiring the availability of classwide arbitration interferes with fundamental

9

attributes of arbitration and thus creates a scheme inconsistent with the FAA." AT & T Mobility LLC, 563 U.S. at 344. The Supreme Court also recently noted that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1923 (2022) (internal quotation marks and citation omitted) (holding that the rule that PAGA actions cannot be divided into individual and non-individual claims is preempted by the FAA and finding that Viking is entitled to compel arbitration of Moriana's individual claim).

The Court finds that individual, non-class arbitration is appropriate here.

### IV. CONCLUSION

BDF's motion to compel arbitration is GRANTED. This action is stayed pending completion of the arbitration. See MediVas, LLC v. Marubeni Corp., 741 F.3d 4, 9 (9th Cir. 2014). The clerk is ordered to administratively close the case. The parties are ordered to file a joint status report no later than two weeks after completion of the arbitration. If the arbitration is not completed by June 24, 2024, the parties must file a joint status report on that date. At that time, the Court will consider whether to dismiss the case rather than to continue the stay. Failure to file a required joint status report is likely to result in dismissal.

IT IS SO ORDERED.

Date: December 27, 2022

*Dale S. Fischer*
Dale S. Fischer
United States District Judge